## Richmond

Andrew P. Miller, Attorney General of Virginia v. David B. Ayres, Jr., Comptroller of Virginia.

State Commission On Local Debt v. Walter W. Craigie, Jr., Secretary, State Commission On Local Debt.

June 15, 1970.

Record Nos. 7427 and 7468.

Present, All the Justices.

*Walter H. Ryland, Assistant Attorney General (Andrew P. Miller, Attorney General; Harry Frazier, III; Jack Spain, Jr.; Hunton, Williams, Gay, Powell and Gibson,* on brief), for petitioners in Record Nos. 7427 and 7468.

*A. C. Epps (J. Edward Betts; Hullihen W. Moore; Christian, Barton, Parker, Epps & Brent,* on brief), for respondents in Record Nos. 7427 and 7468.

Harrison, J., delivered the opinion of the court.

The Attorney General invokes the original jurisdiction of this

court, relying on Code § 8-714. We are asked to issue a peremptory writ of mandamus, requiring David B. Ayres, Jr., Comptroller of Virginia, to issue warrants upon the State Treasury for payment of such amounts as may be authorized by vouchers of the Commission on Local Debt for expenses incurred in rendering assistance to certain political subdivisions planning and marketing bond issues under the terms of Chapter 1 of the Acts of Assembly of 1970, pp. 3-4.

Also before us is a petition addressed to the court by the State Commission on Local Debt, pursuant to Code § 17-96, wherein we are asked to issue a peremptory writ of mandamus directed to Walter W. Craigie, Jr., Secretary of the Commission, directing him to request bids on bonds which Prince William County and the City of Virginia Beach propose to sell, and to distribute notices of sale.

Ayres demurred and filed an answer to the petition of the Attorney General. Craigie answered the petition of the Commission. Both respondents challenge the jurisdiction of this court to hear the respective petitions. It was agreed that the causes be consolidated and considered on the printed briefs and oral argument in *Miller* v. *Ayres* (Record No. 7427) and that a decision on the merits would be conclusive of the same questions presented in both cases.

On September 12, 1968, the Board of Supervisors of Prince William County adopted a resolution to borrow $21,825,000 for school construction purposes, and to issue its general obligation bonds evidencing the debt. The bonds were to be issued in accordance with § 115-a of the Constitution of Virginia and the provisions of the Public Finance Act of 1958. Code §§ 15.1-170 through 227. At that time this Act prescribed a maximum interest rate of 6% per year. A majority of the voters of the county approved the bond issue in an election held November 5, 1968. On the ballot submitting the question it was set forth that the bonds were to be issued pursuant to the said Act. On February 26, 1970, the Board of Supervisors authorized a sale of bonds in the amount of $2,000,000, of the issue approved, to bear interest at the maximum rate of 7% per year.

On December 12, 1967, the Council of the City of Virginia Beach adopted an ordinance authorizing the issuance of bonds in the amount of $1,250,000 for the improvement and extension of the city's sewer system. The bonds were to be issued in accordance with § 127(b) of the Constitution of Virginia and pursuant to the Public Finance Act of 1958. The ordinance recited that the maximum rate of interest to be paid on the bonds would be 6%—the maximum per-

mitted by the Act. A majority of the voters in the city approved the bond issue in an election held January 20, 1968. On February 24, 1970, the Council authorized the issuance and sale of the said bonds, to bear interest at the maximum rate of 7% per year.

The actions of the Board of Supervisors and the City Council in authorizing a sale of bonds at an interest rate of 7%, followed the passage of an Act of the General Assembly of 1970, approved February 12, 1970, hereinafter discussed, which removed the 6% ceiling on bonds to be issued by governmental entities.

■ The original jurisdiction of this court in mandamus cases, provided in § 88 of the Constitution of Virginia, is carried into effect by Code § 17-96.

The State Commission on Local Debt was created by the General Assembly to aid political subdivisions in the planning and marketing of their bond issues. Code § 15.1-173.

The County of Prince William and the City of Virginia Beach sought the assistance of the Commission in marketing the bonds which they proposed to sell. To effect an advantageous sale, it was necessary for the Commission to publicize the sale of the bonds and to solicit bids. Accordingly, the Commission directed its secretary to request bids on the bonds and to distribute notices of sale to the Commission's usual mailing list.

The respondent, Craigie, declined to comply with the directions until certain constitutional questions had been resolved by this court. He maintains that neither the requesting of bids, the distribution of notices of sale, nor other action by the State Commission on Local Debt, is necessary for the issuance of the bonds in question.

True, there was no obligation on the part of the two localities to request assistance from the Commission. However, the record shows both the county and city did request such assistance in the sale of their bonds. Code § 15.1-173 expressly provides that "[u]pon request, the Commission shall also assist the political subdivision or district in the sale of such bonds". (Italics supplied.) The Commission therefore had a statutory duty to perform.

The distribution of the notices was a ministerial act to be performed by an employee and official of the State Commission on Local Debt. This court has jurisdiction to entertain the petition of the Commission, and, if it be so advised, to issue a peremptory writ of mandamus granting the prayer of its petition.

In view of this holding, and our decision on the merits of the

controversy, it is unnecessary that we consider the demurrer of Ayres, Comptroller.

The Attorney General poses the question here as follows: Does Section 2 of an Act of the General Assembly of 1970, approved February 12, 1970, Ch. 1, Acts of 1970, p. 4, authorizing counties and cities to sell bonds previously approved at elections at an interest rate in excess of the maximum rate permitted by law at the time of the elections, violate Sections 115-a and 127 (b), respectively, of the Constitution of Virginia?

The respondents say the issue before this court is: After the approval by the voters of a bond issue in a constitutionally required election, can the law which limited the interest to be paid on the bonds be abrogated to remove such limit and thus increase the burden on the taxpayer beyond the maximum he approved?

We first consider the several constitutional and statutory provisions involved. Section 115-a of the Constitution authorizes counties to borrow money pursuant to authority conferred by the General Assembly by general law. It provides that all county debt must be incurred pursuant to such general law, and, except in certain circumstances, the law authorizing the debt must make provision for submission of the question to the voters for approval or rejection.

Section 127 (b) of the Constitution concerns bonded indebtedness of cities and towns. It provides for a bond referendum in instances in which a bond issue would increase the debt of a city beyond 18% of the assessed valuation of taxable real estate.

The procedure for issuing bonds for counties and cities under both sections is substantially the same, and is set forth in the Public Finance Act of 1958, *supra.*

A county initiates the issuance of bonds by resolution of its governing body. Code § 15.1-186 provides that the resolution shall set forth the purpose and amounts of the issue and shall request the Circuit Court to call the election. Code § 15.1-187 provides that the court shall call the election by the issuance of an order or writ of election.

A city initiates the issuance of bonds by the adoption of an ordinance pursuant to Code § 15.1-179. The ordinance must state the expediency of borrowing money, the amount, the length of time for which the bonds are to be issued, the maximum interest rate, the purpose and the fact that the issue is in excess of the 18% debt limit. Upon receipt of the ordinance, the court orders the election

pursuant to Code § 15.1-180. The form of the ballot, as set forth in § 15.1-183, must contain the date, the amount and the question.

There is no constitutional requirement that a resolution of a county, or an ordinance of a city, the writs of election, or the ballots, specify the interest rate. Neither the resolution nor the ordinance is published or submitted to the voters.

The electors of Prince William County and of the City of Virginia Beach approved the respective bond issues in elections held during 1968. At that time Code § 15.1-200 of the Public Finance Act of 1958 provided that bonds of counties and cities were to be issued at an interest rate not to exceed 6%.

In 1968 the General Assembly amended Code § 6.1-319, increasing the contract interest rate from 6% to 8%. At its 1970 session, the General Assembly, responding to "prevailing money market conditions", determined that a fiscal emergency existed with respect to the ability of the governmental instrumentalities of the state to borrow money. It enacted a law which authorized counties and cities to issue bonds at rates of interest in excess of the rates then permitted by law, and to sell their obligations at a discount. Section 2 of the Act, approved February 12, 1970, *supra*, provides:

"The authority vested in governmental instrumentalities under the provisions of § 1 of this act shall apply only to bonds issued during the period from the effective date of this act to June thirty, nineteen hundred seventy-two, inclusive. Such authority may be exercised by the body authorized to issue such bonds without securing the further approval of any other body, board or agency which may have approved the issuance of such bonds and, in the case of bonds approved by election, without a further election, unless a lower maximum rate of interest was stated in the approval of such other body, board or agency or was stated on the ballot at such election."

The effect of this provision was to remove the 6% interest ceiling on bonds issued by governmental entities until 1972.

It was pursuant to this Act that Prince William County and the City of Virginia Beach determined to sell their bonds bearing interest at a maximum rate of 7% a year—notwithstanding the respective bond issues had been approved by the electors when the statutory maximum interest rate was 6% a year.

In support of this decision by the county and city, the Attorney General argues that the interest rate is controlled by economic forces beyond the control of the governing bodies. He says the fact that bonds, authorized when the maximum rate is 6%, may subsequently have to be marketed at 7% is no more of an extravagance than if the cost of building material and land acquisition had increased by the same amount during the same period.

He relies strongly on the absence of any constitutional or statutory requirement that the initial resolution, the writ of election, the ballot or the final resolution specify a maximum rate of interest at which county bonds are to be sold; and further that there is no constitutional requirement that the ordinance, the writ of election or the ballot specify the interest rate for sale of city bonds. He attaches no particular significance to the statutory requirement that an ordinance of a city council must specify the maximum interest at which the bonds may be sold, arguing the only purpose of the ordinance is to request the court to call the election.

The position of the Attorney General is that if sale at a certain rate of interest is to be a condition precedent to the issuance of the bonds, then it should be included in the question to be placed on the ballot. He points out that in Virginia bond elections are called on order of the court, and that in these cases neither the orders of court, the notices of the election nor the ballots were required to contain or contained any reference or restriction as to interest rate. He therefore says, in light of these facts, the rate of interest was in no way connected with the submission.

Petitioners quote at length from the case of *Burke* v. *City of Louisville*, 275 S. W. 2d 899, 902 (Ky. 1955), and in part, as follows:

"KRS 66.050 provides that if the legislative body of a city of the first or second class deems it necessary to incur a bonded indebtedness it shall, by ordinance, order an election to determine the sense of the voters. The only things required by the statute to be submitted to the voters in the question on the ballot are: the amount of the indebtedness proposed to be incurred, the purpose, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund.

"The interest rate, maturity dates, redemption and recall features, and many other details of the bond issue are to be determined in the discretion of the municipal legislative body. It obviously would be impractical to submit all of the details of the

bond issue in the question to be voted on and would only serve to confuse the voters."

It is noted that the Kentucky statute required the ballot to show "the amount of money necessary to be raised annually by taxation for an interest and sinking fund". With this information a taxpayer would be able to determine the amount of the debt, principal and interest, which he and other taxpayers are being asked to assume.

Petitioners further cite in support of their position *Yesler* v. *City of Seattle*, 1 Wash. 308, 25 P. 1014 (1890), *Langdon* v. *City of Walla Walla*, 112 Wash. 446, 193 P. 1 (1920) and *Stanley* v. *City of Baltimore*, 146 Md. 277, 126 A. 151 (1924).

An examination of these cases will disclose factual conditions dissimilar from the instant case, and constitutional provisions and state statutes unlike those in Virginia.

While no case has been cited that is directly in point, *Peery* v. *City of Los Angeles*, 187 Cal. 753, 761-62, 203 P. 992, 995, 19 A. L. R. 1044, 1049-50 (1922) has relevance. There the question was whether, after a constitutionally required referendum approving a bond issue, the law could be changed to allow the sale of bonds at less than par. It was argued that because the provision prohibiting a sale below par was not on the ballot, but appeared in a separate section of the statutes of California, this term could be retroactively changed by statute and the bonds sold below par. Overruling this contention the court said:

"The electors of the city were advised by its charter and by its ordinances calling these bond elections that the law under which the city and its electors were acting in the matter of the proposed creation of a bonded indebtedness and the issue and disposition of these bonds was the act of 1901, all of the provisions of which were presumably known to every elector whose approval was sought thereon. We do not understand that it is essential, unless expressly made so, that all of the terms and conditions of the statute under which a bond election is to be held shall be set forth in the ordinances calling such election, or detailed upon the ballot submitting the main question to the voters for their approval. . . ."

In *David* v. *Timon*, 183 S. W. 88 (Texas Civ. App. 1916), the law in effect, when a drainage district bond issue was voted, pro-

hibited a sale of bonds for less than their par value and accrued interest. Subsequent to the election, the law was changed to permit a sale at not less than 90% of their par value and accrued interest. The restriction against selling below par was not on the ballot. The court held:

"That law was in effect when the bonds were voted by the taxpayers of the district. It was a part of the consideration the voters had in contemplation, and it was very important because, if the bonds were sold for a less sum than the face par value, less money would be realized for drainage purposes, and the burdens of taxation would be just the same as though par value had been received for the bonds. . . . If the Legislature, after bonds have been voted under a law then in existence, can authorize the sale of them below par, the interest on them could be increased by the Legislature, and the whole contract changed in other respects. There can be no doubt that the provision in the law in effect when the bonds were voted was mandatory and binding upon every one concerned. It became a part of the contract for the issuance and sale of the bonds, and was a part of the consideration for the authorization of their issue." 183 S. W. at pp. 90, 91.

Counsel for petitioners and respondents thoroughly briefed and argued the instant cases and referred to numerous additional authorities. No useful purpose will be served by quoting the provisions of state constitutions and statutes which controlled other state courts in arriving at their conclusions, or comparing them with those of Virginia. We are bound by the meaning of the language used in the Virginia Constitution and by the statutes of this state.

In essence, the dispositive issue here is a narrow one and poses one question: Was the rate of interest to be paid on the bond issues a part of "the submission to the voters"? We think the answer is clearly in the affirmative.

The history and background of §§ 115-a and 127 (b) of the Constitution of Virginia are well-stated in prior decisions of this court. Suffice it to say that the sections require counties or cities seeking to borrow money to obtain first the approval of the people.

The General Assembly implemented the two sections of the Constitution, and provided the conditions under which political subdivisions could borrow money and issue their evidence of debt, by enacting the Public Finance Law of 1958.

Pertinent to every bond issue are four considerations:

The project—the purpose for which the money is being borrowed;

The amount of the proposed bond issue—the cost of the project;

The duration of the bond issue—how and when the money being borrowed is to be repaid;

The interest on the bonds—how much the money being borrowed is costing the taxpayers.

A taxpayer, to make an intelligent and considered judgment, first must determine whether the project is necessary, and whether he wishes his county or city to go into debt to finance it. The amount and maturity of the debt are important and have bearing on the cost of the undertaking and over how many years the burden of repayment is to be spread. Of equal importance is the interest, or cost of the money to finance the project. The law is designed to assure that a voter has available the information needed to make a decision which could result in an increase of his tax burden.

In *Skinner* v. *City of Santa Rosa*, 107 Cal. 464, 472, 40 P. 742, 745, 29 L. R. A. 512, 519 (1895), the court said:

"The rate of interest, the place of payment, the kind of money in which payment must be made, would influence any businessman in determining whether he should incur a personal debt, and must do so when he is called upon as a voter to determine whether he will favor his municipality's incurring a debt, for the payment of which, in common with others, his property is liable to taxation. He might readily consent, upon very favorable terms being offered or proposed, and strenuously oppose it if the terms were unfavorable or were uncertain."

The General Assembly has recognized the importance of the maturity date of bonds and the interest to be paid by providing in Code § 15.1-200 that bonds *shall* bear interest at such rate *not exceeding 6% per annum*, and *shall* mature at such time *not exceeding 40 years* from their date.

Bond issues of counties and cities in Virginia under §§ 115-a and

127 (b) of the Constitution were made in 1968 pursuant to and in accordance with the terms and provisions of the Public Finance Act of 1958. Any person who voted in a bond election was charged with the knowledge that by a statute then in effect the interest rate on the bonds could not exceed 6%. He had a right to rely upon the statute and to expect compliance.

The ordinance of the City Council of Virginia Beach, authorizing the bond issue and requesting the call of an election, stated the amount and purpose of the issue, an interest rate not to exceed 6%, and that the bonds were to be authorized and issued pursuant to the Public Finance Act of 1958 and § 127 (b) of the Constitution.

In the Prince William County bond election, the maximum amount and the purpose of the issue were stated on the ballot, as was the fact that the debt was to be contracted and the bonds issued pursuant to the Public Finance Act of 1958.

In publicity regarding the proposed bond issues, the county and city estimated the bonds would be sold at an interest rate of 4% and 4.2%, respectively. Irrespective of the estimates, the bonds were being sold in accordance with the Public Finance Act of 1958. A voter, deciding on the cost to his county or city of the money to be borrowed, and making a judgment to approve or reject the bond issue, might question the accuracy of the estimated interest cost, but he could rely upon the statute which placed a 6% ceiling.

The provision of the Public Finance Act of 1958, *supra*, limiting payment of interest on bonds to 6% was as much a part of the "submission" of the bond issues of Prince William County and the City of Virginia Beach as was the nature of the projects or the maximum amounts of the issues. Neither the county nor the city could have lawfully issued bonds bearing more than 6% interest at the time of the bond elections. Since it was necessary that the county and city comply with the 6% interest limitation of Code § 15.1-200, such limitation was a basic part of the "voter approval" which had to be obtained, and of the submission.

The issuance of bonds pursuant to an election must be in conformity with the terms and conditions of the submission. The bonds which the governing bodies of the county and city now propose to issue carry an interest rate of 7%, and would not be in conformity. The interest on a bond is a part of the bond. A change in its interest rate from 6% to 7% would increase the burden on the taxpayers.

We find no authority that the terms of a bond can be changed so as to materially increase the burden on the voter after a vote that is constitutionally required. The fact that the rate of interest was not on the ballot is immaterial. The statute decreed what the maximum interest rate could be.

The Constitution gives the General Assembly the right to fix the mode and manner of obtaining the will of the qualified voters on a bond issue. It gives to the majority of the voters the right to authorize the issuance of bonds by governing bodies of political subdivisions. The voters having approved the project and the amount of the bond issue, under a law stating the maximum rate of interest and a maximum maturity date, it is then beyond the power of the General Assembly to authorize a higher rate of interest thereon. The power was in, and the authority came from, a majority of the qualified voters of the county and the city. When expressed under the law then existing, their decision must be complied with, if the bonds are sold. The General Assembly cannot change the voters' will after it has been expressed at the bond election. See *Wallace* v. *Ball*, 205 Ala. 623, 88 So. 442 (1921).

Accordingly, it is our conclusion that neither the bonds approved by the voters of Prince William County at the election held November 5, 1968, nor the bonds approved by the voters of the City of Virginia Beach at the election held January 20, 1968, can be issued and sold at an interest rate in excess of 6% per year.

For the reasons stated, the writs of mandamus prayed for are denied.

*Denied.*