# Richmond

## Gene D. Armstrong, Et Al. v. County of Henrico, Et Al.

June 14, 1971

Record No. 7586.

Present, I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*Marvin F. Cole (Edward F. Johnson, Jr.; Cole, Wells & Bradshaw,* on brief), for appellants.

*J. Mercer White, Jr., County Attorney for Henrico County; Robert L. Dolbeare, Assistant County Attorney for Henrico County,* for appellees.

GORDON, J., delivered the opinion of the court.

Appellants, residents and landowners in each of the Sanitary Districts of Henrico County,[1] challenge an agreement made between the County and its Sanitary Districts as beyond the authority of each. That agreement, dated October 23, 1968 (hereinafter called the "Contract"), provides:

"* * *

"WHEREAS, each of the Districts over a period of years has constructed and now operates as a separate entity a water supply and sewerage system within the metes and bounds of such District and in its immediate environs, and in the course of these years the boundaries of the Districts have grown to the extent that they are contiguous one with another in many areas of the County; and

"* * *

"WHEREAS, it is now the opinion of Districts' Consulting Engineering Firms, as technical representatives for the various Districts, and the Board of County Supervisors, as the governing body of Districts, that substantial economy would result from the operation of the water supply and sewerage systems in each of the Districts if all such systems were connected and operated in the manner of and as a single system, which hereinafter will be referred to as 'System', in that such mode of operation would allow for the most efficient utilization of the facilities of all the various Districts resulting in ultimate savings to the users; and

"* * *

---

[1] Henrico County has thirteen Sanitary Districts: Sanitary District #2 of Henrico County, Sanitary District #3 of Henrico County, Sanitary District #6 of Henrico County, Sanitary District #12 of Henrico County, Sanitary District #16 of Henrico County, Tuckahoe Sanitary District "A" of the County of Henrico, Virginia, Brookland Sanitary District "B" of the County of Henrico, Virginia, Fairfield Sanitary District "C" of the County of Henrico, Virginia, Sanitary District No. 20 of Henrico County, Virginia, Sanitary District No. 21 of Henrico County, Virginia, Sanitary District No. 22 of Henrico County, Virginia, Sanitary District—Lawndale Farms of Henrico County, Virginia and Sanitary District—Windsor Place of Henrico County, Virginia.

"WHEREAS, County, through its Department of Public Utilities, has operated the water supply and sewerage systems of the various Districts as separate entities over several years, and is willing to continue to so operate and maintain said systems as the 'System', under the following terms and conditions:

"NOW, THEREFORE, THIS AGREEMENT WITNESS-ETH: ...

"* * *

## "ARTICLE II

### "Undertakings of Districts

"Sec. 1—Districts hereby authorize and empower County from and after the date of execution hereof to connect, operate, maintain, alter, improve, add to and extend within and without the territory of Districts their several water supply and sewerage systems in the manner of and as a unified single water supply and sewerage system (herein defined and referred to as the 'System').

"Sec. 2—Districts agree that, in consideration of the agreement herein with County whereby County assumes all Districts' responsibilities with respect to providing water and sewerage facilities, and pledges to pay annually from resources enumerated herein the principal of and interest on all bonds issued and as set forth in Article III, Section 5 to be issued for water and sewer purposes by Districts as same shall mature for payment, all cash and other assets held on the date of execution of this agreement by Districts attributable to the Districts' water supply and/or sewerage systems shall be transferred and paid to County. Districts further agree that all future cash to be received as a result of service charges, connection fees and other services rendered within any District by the 'System' shall likewise be credited to the 'System'.

"Sec. 3—If at any time the revenues of the 'System' are insufficient to provide for the operation, maintenance and principal of and interest on the bonded debt of Districts issued by them for their respective water supply and sewerage systems, each of the Districts will levy an ad valorem tax sufficient to pay the principal of and interest on the bonded debt of such District then outstanding as the same shall become due; provided, however, that nothing contained herein shall be construed to relieve County of its obligations under Article III, Section 3 hereof.

"Sec. 4—Districts agree that such service programs, other than water supply and sewerage, as they may desire to implement for the

residents in their respective · Districts, under the authority of· the Sanitary District Laws as are in effect in the Commonwealth · of Virginia, shall be financed by revenues derived from sources other than water supply and sewerage facilities.

"Sec. 5—Each of the Districts at such time as all bonded debt and liabilities of such District attributable to the water supply and sewerage systems within any such individual District have been paid, will transfer to County, in accordance with the procedures of then applicable law, its entire water supply and sewerage systems as then constituted.

## "ARTICLE III

### "Undertakings of County

"Sec. 1—County hereby agrees from and after the date of execution hereof to connect, operate, maintain, alter, improve, add to and extend within and without the territory of Districts their several water supply and sewerage systems in the manner of and as a unified single water supply and sewerage system (herein defined and referred to as the 'System').

"Sec. 2—County hereby assumes each of the Districts' existing contracts pertaining to the water supply and sewerage system of such District as of the date of execution of this contract, exclusive, however, of any bonded indebtedness of such District now or hereafter existing.

"Sec. 3—County agrees that it will impose such rates, rentals, fees and charges for the use of and services of 'System' sufficient to pay all costs of operation and maintenance of 'System', to provide for the payment of the principal of and interest on all bonds issued by Districts for the water and sewerage facilities included in 'System' and to maintain 'System' in good repair and renewal. County further agrees that it will apply all revenues derived from such rates, rentals, fees and charges to the payment of the cost of such operation and maintenance, the principal of and interest on said bonds, such renewals and replacements and any other lawful purposes connected with the operation and maintenance of 'System', including, without limitation, to the making of additions and expansions to 'System'. County may also apply such revenues to the payment of the principal of and interest on any bonds of County issued in connection with Section 5 of this Article III and to the creation and maintenance of such reserves as may be deemed necessary by County to effect any financing

for the 'System' and to any expansions and additions thereto. Districts agree that County may apply said revenues to any of the foregoing purposes in such order of priority as County may determine.

"Sec. 4—County agrees that connection fee charges shall be uniform throughout the various Districts; provided that in those particular Districts listed below in this section the connection fees as set forth, or less, shall prevail for connections made to the system authorized for construction under referendums held prior to the date of execution of this contract if application for service is made and the connection fee is paid within 30-days after notice by County of the availability of service:

| District | Water | Sewer |
| --- | --- | --- |
| #2 | $100.00 | $200.00 |
| #6 | $150.00 | $300.00 |
| #20 | $100.00 | $150.00 |
| #21 | $100.00 | $150.00 |

At such time as all of the construction authorized under the referendums for these areas has been completed and the property owners entitled to such notice have received the notice, all fees shall be uniform from that date.

"Sec. 5—County agrees that from and after the execution of this contract all costs of financing the acquisition, construction, reconstruction, operation, maintenance, improvements, adding to, expansion, renewal or renovation of 'System' or other costs pertaining thereto shall be the responsibility of County, and Districts shall not be required to incur any further debt with respect thereto, and to that end Districts agree that County may issue its bonds to pay any such costs and reimburse itself from the revenues of 'System' for the payment of the principal of and interest on such bonds or may pay the principal of and interest on such bonds from the revenues of 'System' and pledge such revenues to such payment. Districts agree that after the date of execution of this contract they shall not incur any debt payable from or secured by the revenues of their water supply and sewerage systems; provided, however, that the following bonds heretofore authorized by referendum by the respective Sanitary Districts as shown shall nevertheless be issued for the purposes for which such bonds were voted and the facilities constructed

or acquired with the proceeds of such bonds shall be included in 'System':

| Sanitary District | Amount of Bonds Authorized |
|---|---|
| #2 | $1,375,000 |
| #6 | 1,960,000 |
| #20 | 650,000 |
| #21 | 950,000 |
| Lawndale Farms | 100,000 |

"* * *

"Sec. 7—All additions and expansions to 'System' hereafter made within the territory of a District shall constitute a part of the water supply and sewerage system of such District, and all additions and expansions to 'System' hereafter made which are not within the territory of any District shall be the property of County.

"Sec. 8—District and County agree that all the obligations and liabilities of County under this contract shall be limited to and payable solely from the revenues derived from 'System'.

"Sec. 9—County and Districts agree that this contract shall be for a period of 50 years, renewable at the expiration thereof by mutual consent of the parties; provided, however, that notwithstanding the foregoing provisions of this section, at such time as all water supply and sewerage systems of all Districts have become the property of County in accordance with Section 5 of Article II hereof, this contract shall thereupon cease and determine; and provided further, that unless terminated in accordance with the preceding proviso to this sentence, this contract shall not terminate if and so long as the County shall have outstanding and unpaid any bonds issued in connection with Section 5 of this Article III, or until due and adequate provision shall have been made for such payment.

"* * *"

Appellants brought this suit for a declaratory judgment that the Contract is illegal and void.[2] They also asked for injunctive relief.

[2] The plaintiffs-appellants are Gene D. Armstrong, Thomas L. Campbell, Jr., Elmer S. Crummett, J. A. Garnett, Henry S. Hotchkiss, Curtis P. Pleasants, Jr., Roy D. Pullen, Jr., Worth B. Shuman, Douglas J. Snedker, Freddie C. Tate and Ann M. Threadgill. The defendants-appellees are the County of Henrico, B. Earl Dunn, C. Kemper Lorraine, Anthony P. Mehfoud, Edwin H. Ragsdale, L. Ray Shadwell, Jr. and Linwood E. Toombs, who constitute the Board of Supervisors of Henrico County, and the Sanitary Districts of Henrico County (see n. 1 *supra*).

The trial court upheld the Contract and dismissed the bill of complaint. On this appeal, the appellants raise the issues described in the section headings that follow.

## I

Whether the County Assumed Debt Under the Contract
in Violation of Section 115a of the Constitution of Virginia

█ Under Article III, Sec. 2, of the Contract, the County assumed the "existing contracts pertaining to the water supply and sewerage system of each District . . . exclusive, however, of any bonded indebtedness of such District now or hereafter existing". Appellants contend that by assuming those contracts, the County assumed debt prohibited by § 115a of the Constitution of Virginia.[3]

Operators of water and sewerage systems customarily make contracts for the procurement of materials and services necessary to operate the systems. Such contracts, even though they commit the system operators to pay for the materials and services after they are delivered or rendered, do not create debt within the meaning of § 115a of the Constitution. *See Board of Supervisors of Fairfax County v. Massey*, 210 Va. 680, 173 S.E.2d 869 (1970), and the authorities cited therein.

█ Appellants did not introduce the existing contracts into evidence. We will not assume that they created debt prohibited by § 115a, rather than commitments to pay for materials and services delivered or rendered, which are not within the scope of § 115a. *Cf. Board of Supervisors of Fairfax County v. Chesapeake and Potomac Telephone Company of Virginia, ante* at 57, 62. Appellants therefore have not borne their burden of showing that Article III, Sec. 2, of the Contract violates the Constitution.

Article III, Sec. 5, of the Contract makes the County responsible for "all costs of financing" the System and recognizes that "County may issue its bonds to pay any such costs". Appellants contend that the County thereby created debt prohibited by § 115a of the Constitution. But the record does not show that any debt has been created. And we will not assume that when the County arranges for

---

[3] Section 115a of the Constitution of Virginia forbids county debt, other than to meet casual deficits in the revenue or in anticipation of the collection of revenue or to redeem a previous liability, unless approved by a majority of the qualified voters of the county. The Contract was not submitted to the voters.

financing or issues bonds, it will act in contravention of the Constitution.

## II

## Whether the County and the Sanitary Districts Had Statutory Authority to Make a Contract Providing For County Control of the Systems

[█] Appellants adopt the premise that the Sanitary Districts have transferred their water and sewerage systems to the County. But the Contract does not so provide. Rather, the Contract provides that at a future time each Sanitary District will transfer its water and sewerage systems to the County "in accordance with the procedures of then applicable law". Contract, Article II, Sec. 5. In the meantime, each Sanitary District will continue to exist and to own the systems within its boundaries, including improvements made by the County.

Until the Sanitary Districts' systems are duly transferred to the County, the Contract commits the County to operate them. The question is whether the Board of Supervisors, as the governing body of the County and its Sanitary Districts, had statutory authority to cause the County and its Sanitary Districts to make that commitment.

Appellants apparently recognize that title 15.1 of the Code, "Counties, Cities and Towns", authorizes the Board to cause the County to operate water and sewerage systems. Va. Code Ann. §§ 15.1-292, -522 (Supp. 1970); Va. Code Ann. § 15.1-875, -876 (1964).

Chapter 2 of title 21 of the Code, "Sanitary Districts", permits a board of supervisors to authorize a contract between a county and a sanitary district providing for the county's operation of water and sewerage systems within the district. Code § 21-118.4, being part of chapter 2, provides:

"§ 21-118.4. Notwithstanding any other provision of law, when an order has been entered creating a Sanitary District in such County,[4] the board of supervisors or other governing body . . . shall have the following powers . . . .

"* * *

"(c) To contract with any . . . county . . . to acquire, construct, reconstruct, maintain, alter, improve, add to and operate

---

[4] Concededly, orders were duly entered creating the thirteen Sanitary Districts in Henrico County that are parties to the Contract.

any . . . water supply [and] sewerage . . . systems in such district . . . .
"* * *

"(g) To negotiate and contract with any . . . county . . . with regard to the connection of any system or systems with any other system or systems now in operation or hereafter to be established, and with regard to any other matter necessary and proper for the construction or operation and maintenance of any such system within the sanitary district.
"* * * "

Va. Code Ann. § 21-118.4 (Supp. 1970).

Appellants contend, however, that the Contract lacks statutory authority because Code § 21-118.4 authorizes a contract relating only to a system within a sanitary district. Appellants argue that the section does not authorize a county-wide system like that contemplated by the Contract. But clause (g) of Code § 21-118.4 authorizes connection of a district system with another system, whether the other system be inside or outside that district, and title 15.1 of the Code authorizes counties to operate county-wide systems.

### III

#### Whether the Contract Provision Calling For the Issuance of Authorized but Unissued Bonds is Valid

■ Article 3, Sec. 5, of the Contract provides that the authorized but unissued bonds of the Sanitary Districts "shall . . . be issued for the purposes for which such bonds were voted and the facilities constructed or acquired with the proceeds of such bonds shall be included in [the] 'System' ". Appellants contend that the bonds may not be legally sold for the construction of facilities to be included in the "county-wide system" contemplated by the Contract.

Operation of a system under the Contract as a county-wide system does not preclude issuance of the bonds for the purposes for which they were voted. Facilities constructed within a District will be owned by the District and enure to the benefit of residents of the District. The Contract specifies that the unissued bonds "shall . . . be issued for the purposes for which such bonds were voted". The evidence does not show that they will be issued for any other purpose. So we reject the appellants' contention.

## IV
### Whether the Sanitary Districts Can Legally Transfer to the County the Net Revenues Derived From the Operation of the Systems

In Article II, Sec. 2, of the Contract, the Sanitary Districts agree to pay to the County "all cash and other assets held on the date of execution of this agreement by Districts attributable to the Districts' water supply and/or sewerage systems". The Sanitary Districts also agree in that section to credit to the county-wide system "all future cash to be received as a result of service charges, connection fees and other services rendered within any District". Appellants contend that those provisions conflict with Code § 21-137, which provides:

> "§ 21-137. *Interest and sinking fund.* The net revenue derived from the operation of the public utilities so established by the sanitary district shall be set apart by the governing body to pay the interest on the bonds issued hereunder and to create a sinking fund to redeem the principal thereof at maturity. The governing body is hereby authorized and empowered to apply any part or all of the sinking fund in redemption of such bonds, if redeemable by their terms, or to the purchase of any such bonds at any time, and all bonds so redeemed or purchased by such governing body shall be immediately cancelled and shall not be reissued, and the governing body is authorized and empowered to invest all accumulations of money to the credit of the sinking fund in bonds of the United States, of the State of Virginia or of any county, city or town of the State."

Va. Code Ann. § 21-137 (1960).

The trial court held, and the appellees now contend, that Code § 21-137 is not applicable because the bonds of the Sanitary Districts "are not sinking fund bonds". But Code § 21-137 requires a sinking fund to which the net revenues of a system shall be allocated. And that statutory mandate must be obeyed whether or not the resolutions of the Board of Supervisors authorizing the Sanitary District bond issues provided for sinking funds.

Sinking fund provisions in sanitary district bond issues may benefit landowners in the district, as well as bondholders. To the extent that moneys are not available to pay interest on and principal of

sanitary district bonds, a tax is levied on all property in the district subject to local taxation. Va. Code Ann. § 21-137 (1960); Contract, Article II, Sec. 3.

Absent a statutory requirement, bond issues include sinking fund provisions only if agreed to by the governing body of the sanitary district and the underwriters as a result of their negotiations. Landowners do not have the opportunity to negotiate the terms of proposed bond issues before they are submitted for a vote. Because landowners suffer taxation if system revenues are diverted to other purposes than payment of bonds, we interpret the sinking fund provisions of Code § 21-137 as intended to protect the landowners' interests.[5]

When the voters approved any Sanitary District bond issue, they were entitled to rely upon the District's compliance with the sinking fund requirements of § 21-137. *See Miller* v. *Ayres*, 211 Va. 69, 175 S.E.2d 253 (1970). And taxpayers have standing to attack an alleged illegal diversion of public funds. *Gordon* v. *Board of Supervisors of Fairfax County*, 207 Va. 827, 153 S.E.2d 270 (1967).

When the Contract was made, the Sanitary Districts had on hand accumulated funds derived from the operation of the systems, but had no unspent proceeds of bond issues. To the extent that those funds and funds subsequently accumulated represent net system revenues of any Sanitary District, they should be set apart as a sinking fund for the payment of interest on and principal of the bonds of that District.

## V

### Whether the Sanitary Districts Can Legally Agree That the County Shall Fix Rates and Charges

■ The Contract provides that the County will impose rates and connection charges for the county-wide water and sewerage systems.

---

[5] " . . . The object of their creation [the creation of a sinking fund] is to render lighter the burdens of taxation by spreading the payment of a large and long-time indebtedness over the period of years such indebtedness is to run, which experience has shown eases the load which the taxpayers would be required to shoulder were the entire debt to be paid from moneys collected in a single year. . . . This is not to say that the sinking fund itself, when once created, is not of importance to the holders of bonds which its accumulations are designed ultimately to pay; for, it constitutes a reservoir from which they are entitled to draw as a cumulative source of payment of the general liability of the municipality and maintained by its resulting duty to levy taxes, and to continue to levy taxes, until the indebtedness is paid." 1 *L. Jones, The Law of Bonds and Bond Securities* § 427 (1935).

Contract, Article III, Sec. 3. The appellants contend that the Sanitary Districts have illegally delegated this authority to the County.

The first question is whether the appellants have standing to make this contention in view of our holding in *Abbott* v. *Board of Supervisors of Amherst County*, 200 Va. 820, 108 S.E.2d 243 (1959). In *Abbott*, we held that a user of a sewage system had no standing to attack rates made by the duly constituted rate making body. Here the appellants attack an allegedly illegal delegation of rate making authority. So *Abbott* does not control this case.

Code § 21-118.4(e) charges the governing body of each sanitary district with the power and duty "to fix and prescribe the rates of charge for the use of any such system or systems", that is, charges for water, sewerage and other services provided by the district. The Contract charges the County with the power and duty to carry out that legislative function. Legislative functions cannot legally be so delegated. *Hopkins* v. *City of Richmond*, 117 Va. 692, 706, 86 S.E. 139, 143 (1915), *overruled on other grounds, Irvine* v. *Clifton Forge*, 124 Va. 781, 97 S.E. 310 (1918); *McCrowell* v. *City of Bristol*, 89 Va. 652, 16 S.E. 867 (1893).

It is no answer to point to the fact that the same persons constitute the governing bodies of the County and of each Sanitary District. Code § 21-118.4(e) contemplates that rates will be fixed for each District individually with a view to its needs, while the Contract prescribes that rates will be fixed for the County as a whole with a view to its needs.

The decree appealed from is reversed and the case is remanded for the entry of a decree consistent with this opinion and such further proceedings as may be appropriate.

*Reversed and remanded.*