CITY OF SOUTH BOSTON

v.

HALIFAX COUNTY

Record No. 930318

February 25, 1993

Present: All the Justices

*Carter Glass, IV (John S. West; Mays & Valentine,* on briefs), for appellant.

*C. Richard Cranwell (James E. Buchholtz; H. Keith Moore; Cranwell & Moore,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

### I.

The City of South Boston initiated this proceeding by filing a petition to change its status from that of a city to a town. On appeal, the City challenges conditions included in the judgment of the special court that permits the City to revert to town status.

### II.

The City of South Boston is a municipal corporation completely surrounded by Halifax County. South Boston was incorporated as a town in 1884 and became a city in 1960. The City occupies 5.09 square miles. Its population in 1990 was 6,997.

Halifax County is the fourth largest county in Virginia, occupying approximately 803 square miles. The County's population in 1990 was 29,033.

The populations of South Boston and Halifax County are older and less affluent than the population of the entire state. Both the City and the County are experiencing fiscal problems.

Code §§ 15.1-965.9 through -965.27 were enacted by the General Assembly in 1988 and became effective July 1, 1989. These statutes permit a city with a population of less than 50,000 people to revert to town status provided certain criteria are met. Code § 15.1-965.16, which governs our disposition of this appeal, states in relevant part:

A. The court, without a jury, shall hear the case upon the evidence, as evidence is introduced in civil cases.

B. The court shall enter an order granting town status if the court finds that:

1. The city has a current population of less than 50,000 people;

2. The adjoining county or counties have been made party defendants to the proceedings;

3. The proposed change from city to town status will not substantially impair the ability of the adjoining county in which the town will be located to meet the service needs of its population;

4. The proposed change from city to town status will not result in a substantially inequitable sharing of the resources and liabilities of the town and the county;

5. The proposed change from city to town status is, in the balance of equities, in the best interests of the city, the county, the Commonwealth, and the people of the county and the city; and

6. The proposed change from city status to town status is in the best interests of the Commonwealth in promoting strong and viable units of government.

C. In making the findings required by subdivisions 3 and 4 of subsection B of this section, the court shall have authority to impose such terms and conditions as it deems appropriate to:

1. Ensure an orderly transition from city status to town status;

2. Adjust financial inequities;

3. Balance the equities between the parties; and

4. Ensure protection of the best interests of the city, the county, the Commonwealth, and the people of the county and the city.

In 1990, the City filed a notice with the Commission on Local Government, thereby initiating this reversion proceeding against the

County. This is the first such action initiated by a Virginia city. Pursuant to Code § 15.1-945.3, the Commission conducted a hearing and rendered its advisory report recommending that the City be permitted to revert to town status if certain conditions were satisfied. Subsequently, the City filed a petition with the Circuit Court of Halifax County, and we appointed a special three-judge court in accordance with Code § 15.1-965.10.

After hearing evidence and argument of counsel, the court entered a final order that permitted the City to revert to town status, subject to certain conditions. The City objected to the following conditions: a prohibition against the new town from exercising its right to initiate an annexation proceeding against the County for 15 years; a requirement that the new town's water and sewer rates shall be equal for customers of the new town and County; a requirement that the County and the new town must agree upon allocation and conditions of allocation of the new town's unused capacity for water and sewer services before any new services may be granted; a requirement that the new town maintain the current levels of certain services provided to its residents; and a requirement that the City transfer title to its schools to Halifax County and the County finance and operate those schools in the same manner it finances and operates other County schools.[1] We awarded the City an appeal.

### III.

The City argues that the special court lacks the statutory authority to prohibit the new Town of South Boston from initiating an annexation proceeding against Halifax County for a specified period of time. The City contends that "the generalized language of [Code] § 15.1-965.16 can not be construed to nullify the specific annexation rights found in the separate Chapter 25 of Title 15.1 of the Code." The County contends, however, that Code § 15.1-965.16 vests such power in the special court.

 Both litigants rely upon rules of statutory interpretation and legislative history to support their respective positions regarding Code § 15.1-965.16. In our application of this statute, we do not resort to the rules of statutory interpretation or legislative history because the language contained in Code § 15.1-965.16 is free from ambiguity. *Wilder* v. *Attorney General,* 247 Va. 119, 124, 439 S.E.2d 398, 401

---

[1] The County acknowledges that the special court's final judgment requires the County to pay the existing debt on the City's schools when those schools are transferred to the County, and, therefore, the City's assignment of error relating to this issue is moot.

(1994); *Barr* v. *Town & Country Properties, Inc.,* 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990); *Marsh* v. *City of Richmond,* 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987).

Code § 15.1-965.16 gives the special court discretion to impose appropriate terms and conditions upon the City's reversion to town status. Relying upon this statute, the County argues that the special court may limit the new town's right to petition for annexation because, the County says, the special court exercises judicial and quasi-legislative functions. The County asserts that the special court "may conclude that the appropriate way to (i) ensure an orderly transition to town status, (ii) adjust the financial inequities, (iii) balance the equities between the parties or (iv) protect the best interest of the city, county, Commonwealth and the people in the city and county, would be to place a limitation on a town's right to annex county territory for a specified period of years."

■ We disagree with the County. Code §§ 15.1-1032 through 15.1-1070 comprise Chapter 25 of Title 15.1 of the Code and govern annexation proceedings. Code § 15.1-1033 specifically gives a town the right to petition a circuit court for the annexation of territory.[2] Code § 15.1-1041 authorizes the annexation court to grant a town's petition for annexation of territory provided certain statutory prerequisites are met.

■ We find no language in Code § 15.1-965.16 that empowers the special court to divest a town of its statutory right to initiate an annexation proceeding authorized by Code § 15.1-1033. The statutory right to file a petition for annexation is expressly conferred upon towns by the General Assembly, and we hold that the General Assembly simply did not authorize a special court to divest a town of this statutory right. Furthermore, we observe that in the event the newly created town files a petition to annex the territory in the County, an annexation court is certainly entitled to consider the financial impact that a prior reversion had upon the County.

Alternatively, the County contends that the City's acceptance of a provision in the final judgment prohibiting the new town from filing a petition to reacquire city status for a period of 20 years estops the City from challenging the special court's moratorium on annexation. We disagree.

---

[2] Code § 15.1-1033 states, in part:

The council of any city or town may by an ordinance passed by a recorded affirmative vote of a majority of all the members elected to the council, or to each branch thereof, if there are two, petition the circuit court of the county in which any territory adjacent to such city or town lies, for the annexation of such territory.

■ We are of opinion that the City has not taken inconsistent positions. Code § 15.1-982.1 gives a town the right to initiate proceedings to acquire city status. This statutory right is separate and distinct from a town's statutory right to initiate proceedings to annex territory. The City's consent to waive the new town's right to initiate proceedings under Code § 15.1-982.1 for a prescribed period does not operate as an estoppel of the City's right to challenge the validity of the special court's prohibition on annexation. Simply stated, the City's decision to waive one statutory right conferred upon the new town does not bar the City from asserting the new town's right to exercise a separate and distinct statutory right.

## IV.

The special court required that the new Town of South Boston maintain "at least the current levels of service as to fire and police protection, trash and garbage collection, issuance, inspection and supervision of permits and construction, recreation, planning and zoning, and all similar services now provided" unless the County and the new town agree otherwise. The City argues that the special court abused its discretion by directing the new town to maintain indefinitely its current level of urban services provided to its residents.

The County, however, argues that the special court did not abuse its discretion because Gary Christie, the city manager of South Boston, testified that the new town would provide these services to its residents and that the provision of services by the City would not be affected by its reversion to town status. Therefore, the County asserts that the special court was entitled to enter a judgment in conformity with the city manager's testimony.

■ We are of opinion that the special court abused its discretion by requiring that the new town maintain the current level of services. Such a requirement would mandate that the town provide these services at the present level indefinitely, even though circumstances may change and the need for services may change. The city manager's testimony is insufficient to support the imposition of this broad requirement that undoubtedly could impair the new town council's authority to provide basic services to its residents.

## V.

■ The special court held that the rates that the new town charges for water and sewer services shall be equal "for the present and future

customers and residents of both the town and the county." The City argues that the special court did not have the power to impose this condition because municipalities have express statutory authority to determine rates and charges for water and sewer services. Relying principally upon *County of Rockingham* v. *City of Harrisonburg,* 224 Va. 62, 294 S.E.2d 825 (1982), the County argues that there is clear authority for a special court to order an equalization of rates between city and county customers. Furthermore, the County argues that the special court did not set rates, but merely required that the rates the new town establishes for its citizens must be the same as the rates the town charges to its customers who reside in the County.

We disagree with the County. Code § 15.1-875 authorizes a municipal corporation to operate water supplies and water production, preparation, distribution, and transmission systems, and to charge and collect compensation for water thus furnished. Code § 15.1-876 authorizes a municipal corporation to operate sewage transmission, treatment, and disposal systems and facilities, and to charge and collect compensation for such services. Indeed, we have held that "setting rates and fees for sewer or water services is a nondelegable legislative function." *County of York* v. *King's Villa, Inc.,* 226 Va. 447, 450, 309 S.E.2d 332, 333 (1983); *Armstrong* v. *County of Henrico,* 212 Va. 66, 77, 182 S.E.2d 35, 43 (1971). Code § 15.1-965.16 does not confer upon a special court the authority to fix water and sewer rates. To hold otherwise would allow a special court to exercise or interfere with a legislative function that the General Assembly has expressly conferred upon municipalities.

Contrary to the County's assertions, *Rockingham* v. *Harrisonburg, supra,* does not support the proposition that a special court has the authority to equalize rates between city and county customers. In *Rockingham,* the City of Harrisonburg filed an annexation proceeding against the County of Rockingham. 224 Va. at 69, 294 S.E.2d at 827. The annexation court ordered the County of Rockingham to transfer to the City of Harrisonburg title to certain water and sewer facilities located in the annexed area and required the city to pay the county for these assets. *Id.* at 86, 294 S.E.2d at 837. We held that Code § 15.1-1041(b1)(viii) and § 15.1-1042(C) gave the annexation court the power to order a transfer of public facilities and, under the facts and circumstances of that case, the annexation court did not abuse its discretion in ordering title to these facilities transferred to the city. *Id.*

Here, the issue is not whether the special court has authority to transfer title to the water and sewer facilities. Clearly, the special court

has such authority. Code § 15.1-965.23.[3] Rather, the issue before us is whether the special court may limit the new town's power to regulate water and sewer rates and, as we have stated, the special court lacks authority to do so.

## VI.

During the proceedings before the special court, the County requested that the City, as a condition of reversion to town status, reserve for the County's use an unspecified percentage of the remaining unused capacity in the City's water supply and sewage treatment facilities. The special court did not grant the County the right to use a portion of the City's unused water and sewer capacity. The special court did, however, prohibit the City and the County from providing any new utility service until the City and County agreed upon "allocation and conditions of allocation of the remaining unused existing capacity for water and sewage services in both the city and the county."

The City argues that the special court abused its discretion because it, in effect, declared a utility moratorium in South Boston and the surrounding area until such time as the County and City agree upon the unused water and sewer allocation. The County argues that the special court did not abuse its discretion because Code § 15.1-965.16(C)(3) gives the special court broad discretion to balance the equities between the County and the City. The County says that the special court's final order permits the new town to use the County's landfill, which will reduce the life of that landfill by approximately four years. The County asserts that the special court "in balancing the equities, determined that setting aside a portion of the City's surplus water and sewer capacity for the County was an appropriate off-set to the landfill burden imposed on the County."

We disagree with the County's position. Neither the County nor the City challenges the special court's authority to allocate surplus water and sewer capacity. Code §§ 15.1-965.16 and 15.1-965.23

---

[3] Code § 15.1-965.23 states:

Unless otherwise provided by agreement of the governing bodies of the city and county, or by order of the court pursuant to § 15.1-965.16, such town shall remain liable for all of the bonded indebtedness, current debts, obligations, and liabilities if incurred as a city. Unless otherwise provided by agreement of the governing bodies of the city and county, or by order of the court pursuant to § [15.1-965.16] the title to all of the real and personal property of the former city and all of its rights and privileges under any contract, and all of its books, records, papers and other things of value, shall vest in and become the property of the town.

confer upon the special court the authority to make decisions regarding how city-owned properties would be used after the reversion to town status. However, rather than exercise the power conferred upon it by Code §§ 15.1-965.16 and 15.1-965.23, the special court directed that the litigants decide the allocation themselves and, in effect, imposed a punitive sanction upon the litigants until they reached an agreement. We hold that under these circumstances, the special court abused its discretion.

## VII.

We will reverse those portions of the judgment of the special court that are inconsistent with this opinion. We will remand this proceeding to the special court for the sole purpose of determining the effective date of the City's transition to town status in accordance with Code § 15.1-965.21.

*Reversed and remanded.*