PRESENT: Lemons, C.J., Mims, Powell, McClanahan, Kelsey, and McCullough, JJ., and Millette, S.J.

ANDREA LAFFERTY, ET AL.

v. Record No. 160777

SCHOOL BOARD OF FAIRFAX COUNTY

OPINION BY
SENIOR JUSTICE LEROY F. MILLETTE, JR.
April 13, 2017

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

This appeal concerns standing under the Declaratory Judgment Act, Code §§ 8.01-184 through -191. We address whether a student at a public high school, by and through his parents as next friends, has standing to sue the school board based on his alleged distress over potential repercussions from the school board's expansion of its anti-discrimination and anti-harassment policy. We also consider whether his parents, individually, and a third resident of the county have taxpayer standing. For the reasons stated herein, we conclude that the trial court did not err in finding that none of the plaintiffs have standing.

I. FACTS AND PROCEEDINGS

As this case was decided on a motion to dismiss for lack of standing, the relevant facts are the allegations as pled in the complaint.

This lawsuit was initiated by Andrea Lafferty, John and Jane Doe in their individual capacities, and their minor son, Jack Doe, by and through his parents as next friends. The action sought a declaratory judgment and preliminary and permanent injunctive relief against the Fairfax County School Board ("the Board") for the allegedly unlawful expansion of its non-discrimination and student code of conduct policies.

On November 6, 2014, the Board voted to add the category of "sexual orientation" to its non-discrimination policy. On May 7, 2015, the Board also voted to add the category of "gender

identity" to its non-discrimination policy, and to add "gender identity" and "gender expression" discrimination to the list of offenses in the student handbook for which students can be suspended from school.

Plaintiff Andrea Lafferty is a citizen, taxpayer, and resident of Fairfax County. She is president of the Traditional Values Coalition and "has researched and analyzed Defendant's policymaking" and has "provided to Defendant board members the results of her research, including the deleterious consequences of acting without legislative authorization."

Plaintiff Jack Doe is a minor and is a high school student in the Fairfax County Public Schools, who appears by and through his parents as next friends. Plaintiffs John and Jane Doe are Jack's parents, citizens, taxpayers, and residents of Fairfax County.

In describing the "Nature of the Action," plaintiffs ask "this Court to halt Defendant's attempt to introduce a new, undefined, experimental classification into the non-discrimination policy and student handbook" because "Defendant's actions were void ab initio under Virginia Code §§ 1-248, 15.2-965 and under Dillon's Rule" and "Defendant wholly lacks authority to add those classes to its non-discrimination policy and . . . its student handbook." Plaintiffs requested a declaratory judgment declaring the Board's actions ultra vires and void ab initio, and requested injunctive relief.

The complaint alleges Jack Doe is: (1) "distressed" because he "has no idea what words or conduct might be interpreted as discriminating on the basis of 'gender identity,' and therefore does not know what speech or conduct might subject him to discipline"; (2) "distressed" because "he understands that the decision will mean that the restrooms, locker rooms and other intimate spaces . . . will now be open to students who might have the physical features of one sex but are permitted to use the bathroom of the opposite sex which the student 'identifies' as, whatever that

2

means"; (3) unsure of whether he can question someone appearing to be a girl in his locker room or bathroom; (4) "nervous about having to think about every statement or action and its potential sexual connotations," which causes him "significant distress to the point that it adversely affects his ability to participate in and benefit from the educational program"; (5) "terrified of the thought of having to share intimate spaces with students who have the physical features of a girl, seeing such conduct as an invasion of privacy"; (6) unable to "regard school as a safe place where he can learn . . . without fear of harassment, being charged with harassment, and having his speech and conduct chilled by the fear of reprisals or of discipline for unknowingly violating the ambiguous code of conduct"; and (7) inhibited in his "ability to fully and freely participate in and benefit from the school's educational program."

The complaint states that an actual controversy exists "in that Plaintiffs assert that Defendant's actions . . . [are] ultra vires and void ab initio while Defendant asserts that it has the authority to expand its non-discrimination policy," and "in that Plaintiffs assert that . . . subjecting students to discipline without proper notice of the conduct for which they can be suspended exceeds Defendant's authority under Virginia law, while Defendant asserts that it can consistent with Virginia law insert the terms 'gender identity' and 'gender expression' into the student handbook and subject students to discipline."

The Board filed a "Motion to Dismiss and Demurrer," arguing that the only statute that authorizes a court to determine whether a school board's actions comply with Virginia law is Code § 22.1-87 (permitting parties aggrieved by actions of the school board to seek review in a circuit court within 30 days), and that plaintiffs lack standing under that statute. As the Declaratory Judgment Act does not create additional substantive rights, the Board alleges plaintiffs lack standing.

3

After considering briefs and argument, the circuit court concluded that Andrea Lafferty and the Does individually lacked taxpayer standing, and that Jack Doe lacked standing because the court did "not find that his disappointment with or anxiety or confusion or distress over the action of the school board constitutes a case or controversy or an adjudication of a right that gives him access to the declaratory judgment powers and the injunctive relief powers that this court possesses." The circuit court dismissed without leave to amend, observing that, if Jack was disciplined, he at that time could attempt to appeal any action of the Board to the circuit court as an "aggrieved" party under Code § 22.1-87. We granted this appeal.

## II. DISCUSSION

"A plaintiff has standing to institute a declaratory judgment proceeding if it has a 'justiciable interest' in the subject matter of the proceeding, either in its own right or in a representative capacity. In order to have a 'justiciable interest' in a proceeding, the plaintiff must demonstrate an actual controversy between the plaintiff and the defendant." *W.S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996) (citations omitted). This requirement is explicitly set forth in the statute authorizing declaratory judgment actions, empowering circuit courts "to make binding adjudications of right" in "cases of actual controversy" where there is an "actual antagonistic assertion and denial of right." Code § 8.01-184; *see also Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 45-46, 743 S.E.2d 132, 135-36 (2013). Accordingly, we examine the pleadings set forth by the plaintiffs to determine whether they have a justiciable interest and therefore standing to advance a declaratory judgment action before the circuit court.

  A. *Individual Standing: Jack Doe, by and through John Doe and Jane Doe, his parents as next friends*

4

As an initial matter, the plaintiffs allege that fair inferences were not taken in favor of Jack Doe. The record shows that the trial court accepted the pleadings as true. Even taking all fair inferences from the facts pled in favor of plaintiffs, the complaint fails to set forth an actual controversy.

"The declaratory judgment acts do not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are the subject of judicial power." *Williams v. Southern Bank of Norfolk*, 203 Va. 657, 662, 125 S.E.2d 803, 807 (1962) (citation omitted). "The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature." *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970). However, when the "actual objective in the declaratory judgment proceeding is a determination of a disputed issue rather than an adjudication of the parties' rights, the case is not one for declaratory judgment." *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87, 99, 737 S.E.2d 1, 7 (2013) (internal quotation marks, alterations, and citation omitted).

This complaint fails to set forth a controversy "that is justiciable, that is, where *specific adverse claims*, based upon *present rather than future or speculative facts*, are ripe for judicial adjustment." *Id.* at 98, 737 S.E.2d at 6-7 (citation omitted) (emphases added).

First, the complaint fails to allege actual or potential injury in fact based on "present rather than future or speculative facts." *Id.* The complaint alleges only that Jack Doe fears that the policy might involve the use of his bathroom or locker room by a transgender student. Jack's sharing of a bathroom or locker room by a transgender student is, however, a purely speculative fact. It is not clear what, if any, bathroom policies are being implemented, or even that Jack

5

attends school with a single transgender student. Similarly, Jack alleges that he is "distressed" about how his words might be misinterpreted and thinks cautiously about his speech. Yet Jack does not allege any present facts that would place him in violation of the policy, rendering any injury purely speculative. While Jack alleges general "distress" in his educational environment, this "distress" appears to be due to the existence of the policy out of a general fear that he might be disciplined for an inadvertent action. There is no connection with an articulated injury that Jack is suffering or will suffer based on the present facts as pled. We are left with Jack's bald assertion of fear of discipline without any alleged predicate facts to form the basis for such a fear. While we do not reach the question of what must be pled to establish an actual controversy, the injury pled here is insufficient because general distress over a general policy does not alone allege injury sufficient for standing, even in a declaratory judgment action.

Additionally, the complaint fails to assert "specific adverse claims" of right: the complaint did not seek a declaration of a specifically identified or actionable right belonging to Jack Doe. None of the cited education statutes relating to the authority of the school board under Title 22.1 provide a private right of action. "When a statute is silent . . . we have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it." *Cherrie v. Virginia Health Services*, 292 Va. 309, 315, 787 S.E.2d 855, 858 (2016). Similarly, "we do not infer a private right of action when the General Assembly expressly provides for a different method of judicial enforcement." *Id.* Code § 22.1-87 authorizes a private right of action as a judicial remedy to school board actions, allowing parties "aggrieved" by a decision of the Board to challenge the action in circuit court within 30 days. Consequently, if Jack becomes "aggrieved" under the statute, he may at that point bring a cause of action in circuit court. While an appeal under Code § 22.1-87 may not be the exclusive

6

manner of challenging a school board decision, there can be no standing for a declaratory judgment action without an actual controversy. In cases of actual controversy, a declaratory judgment action could challenge a school board policy when there is an "antagonistic assertion and denial of right" – whether that right be derived from statutes, common law, or constitutional law.

If Jack Doe had standing, his parents could bring the action as next friends of their son, as Jack Doe would be the party in interest. *Estate of James v. Peyton*, 277 Va. 443, 454, 674 S.E.2d 864, 869 (2009). In this case, however, the complaint as pled failed to allege an actual controversy, and Jack Doe therefore lacked standing to bring a declaratory judgment action in the circuit court.

### B. Taxpayer Standing: Lafferty and the Does

Both Lafferty and the Does in their individual capacity are identified as residents and taxpayers, and they seek to bring the action based upon taxpayer standing.

In *Goldman v. Landsidle*, 262 Va. 364, 552 S.E.2d 67 (2001), this Court considered the issue of local taxpayer standing when no individual injury was alleged separate from the public at large. This Court recognized such taxpayer standing is "premised on the peculiar relationship of the taxpayer to the local government that makes the taxpayer's interest in the application of municipal revenues direct and immediate," giving local taxpayers a personal stake in the outcome of the controversy. *Id.* at 372, 552 S.E.2d at 71 (internal quotation marks and citation omitted). As a result, local taxpayers possess the common law right "to challenge the legality of expenditures by local governments," distinct from federal or state standing requirements. *Id.*

Importantly, the common thread in the line of precedent cited in *Goldman* relies on that key element: the connection to government expenditures. *See, e.g.*, *Burk v. Porter*, 222 Va. 795,

7

798, 284 S.E.2d 602, 604 (1981); *Armstrong v. County of Henrico*, 212 Va. 66, 76, 182 S.E.2d 35, 42 (1971); *Gordon v. Board of Supervisors of Fairfax Cnty.*, 207 Va. 827, 830-31, 153 S.E.2d 270, 273 (1967); *Appalachian Elec. Power Co. v. Town of Galax*, 173 Va. 329, 332-33, 4 S.E.2d 390, 392 (1939) (all allowing taxpayer standing to challenge local government expenditures or agreements concerning expenditures). The complaint in the instant case lacks allegations of costs or expenditures connected to the policies implemented by the Board. Indeed, the sole reference to monetary costs can be found where the complaint states that Lafferty presented evidence to the school board of the costs of defending the Board's actions in court. The cost of potential litigation to vindicate a policy, while a potential expense related to any action by a school board, is not a government expenditure authorized by the policy itself.

The plaintiffs request that this Court infer costs accompanying a policy change, and to consider costs of implementing the policy. This we cannot do. First, allegations of revenue expenditures have not been pled, and any inferences as to revenue expenditures would be wholly speculative on the part of this Court. Furthermore, under such a theory, any government policy would be subject to challenge by any taxpayer due to even nominal costs of implementation. Taxpayer standing is based on a special relationship between local taxpayers and local revenue expenditures, thereby creating a "direct and immediate" relationship; taxpayer standing does not open the door to challenge any local government action. *Goldman*, 262 Va. at 372, 552 S.E.2d at 71 (citations omitted).

We have said that taxpayer standing does not provide a plaintiff standing "upon his bare position as a taxpayer of the city and his assertion that the zoning ordinance was invalid vis-a-vis the city's claim that it was valid." *City of Fairfax v. Shanklin*, 205 Va. 227, 230, 135 S.E.2d 773, 776 (1964). Here, the complaint makes clear that the standing of Lafferty and the Does in their

individual capacity would be based on nothing other than their "bare position as . . . taxpayer[s]" and their assertion that the policy of the Board is invalid—in this case, ultra vires—vis-à-vis the Board's claim that it was valid. *Id.* In *Shanklin*, this Court went on to conclude that the "situation presented . . . is nothing more than a difference of opinion between a taxpayer and his government," and not an actual controversy. *Id*. at 231, 135 S.E.2d at 777. The same is true here.

Furthermore, the various additional facts claimed by Lafferty and the Does individually—that Lafferty was involved in providing information to the Board in its decision making and has a history with this particular issue, and that the Does are parents—do not provide them with additional grounds for standing as they do not articulate unique injuries compared to that of the general public. Lafferty does not allege any specific injury to her, and zealous interest in this topic alone is not sufficient to create standing. *See Charlottesville Area Fitness Club Operators*, 285 Va. at 98, 737 S.E.2d at 7 (justiciable interest requires plaintiff to allege "facts demonstrating an actual controversy between plaintiff and defendant, such that the plaintiff's rights will be affected by the outcome of the case." (internal quotation marks, alterations, and citations omitted)). The Does, in their individual capacities, likewise, have not pled any unique injury or potential injury that would provide a basis for standing. They have merely stated that they are parents of a child in the school district.

In *Shanklin*, this Court stated that "the plaintiff's case, revealed in its true nature, is but a wholesale, broadside assault upon the city's zoning ordinance, bereft of a single real complaint of injury, or threatened injury." 205 Va. at 230, 135 S.E.2d at 776. Here, as in *Shanklin*, "[a] controversy is not created by taking a position and then challenging the government to dispute it." *Id*. at 231, 135 S.E.2d at 777. Neither Lafferty nor the Does may claim taxpayer standing.

9

*C. Dismissal without Leave to Amend*

The final assignment of error granted by this Court was that "The Circuit Court erred in dismissing the Complaint without ever affording Plaintiffs the opportunity to amend."

Plaintiffs do not mention leave to amend in their opening brief nor advance any explanation as to how they would have amended their complaint to allege a justiciable controversy in which a specific adverse claim based upon present facts would make their case ripe for judicial determination. Instead, they argue, under this assignment of error, that they are entitled to a merits analysis before this Court despite the fact that the merits of the case were not adjudicated by the trial court. The reply brief merely reiterates the position of the opening brief.

This Court requires that "[t]he opening brief . . . must contain," among other elements, "[t]he standard of review, the argument, and the authorities relating to each assignment of error." Rule 5:27(d). Absent argument and authority, an assignment of error is deemed to be abandoned. *Andrews v. Commonwealth*, 280 Va. 231, 252, 699 S.E.2d 237, 249 (2010); *Teleguz v. Commonwealth*, 273 Va. 458, 471, 643 S.E.2d 708, 717 (2007). Accordingly, we find this assignment of error abandoned, and will not consider it.

III. CONCLUSION

As the parties failed to allege an actual controversy sufficient to bring a declaratory judgment action, they likewise may not recover the injunctive relief requested therein. For the reasons stated, we will affirm the judgment of the circuit court.

*Affirmed.*

10