PRESENT:  All the Justices

MICHAEL V. McCLARY, ET AL.

OPINION BY
v.  Record No. 191132                          JUSTICE S. BERNARD GOODWYN
October 22, 2020

SCOTT H. JENKINS, ET AL.

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Paul M. Peatross, Jr., Judge Designate

In this appeal, we consider whether the circuit court erred in dismissing a suit by local

taxpayers for declaratory and injunctive relief, filed against a sheriff and a locality concerning

the sheriff's cooperation agreement with the federal government, regarding the enforcement of

federal immigration laws.

BACKGROUND

On April 24, 2018, the sheriff of Culpeper County, Scott H. Jenkins (Sheriff Jenkins),

entered into an agreement with the United States Immigration and Customs Enforcement (ICE),

a component of the Department of Homeland Security, pursuant to 8 U.S.C. § 1357(g) (the

287(g) Agreement[1]).  The 287(g) Agreement authorizes Sheriff Jenkins, and his officers, to

interrogate any person they detain about the person's right to be or remain in the United States,

to serve warrants for immigration violations, to administer oaths and take evidence to complete

alien processing, to prepare charging documents, to issue immigration detainers, and to detain

and transport arrested aliens who are subject to removal to an ICE-approved detention facility.

The 287(g) Agreement also provides that those officers in the Culpeper County Sheriff's Office

---

[1] These agreements are often called "287(g)" agreements because Section 287(g) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, codified at 8 U.S.C. § 1357, as amended, authorizes such agreements.  *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996); *see also* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

participating in the operation of the 287(g) Agreement "will exercise their immigration-related authorities only during the course of their normal duties."

On November 28, 2018, having learned that Sheriff Jenkins entered into the 287(g) Agreement with ICE to enforce federal immigration law, Michael V. McClary (McClary) and Christina Stockton (Stockton), as residents and taxpayers of Culpeper County, filed a complaint in the Circuit Court of Culpeper County against Sheriff Jenkins and the Board of Supervisors of Culpeper County (the Board), seeking declaratory and injunctive relief.

McClary and Stockton seek to have the courts prohibit the alleged use of local tax revenue to enforce federal immigration law and assert that use of local funds for that purpose is unlawful. They state, in their complaint, that the Board "appropriates certain funds" from its general fund to the sheriff's office. No specific appropriation regarding the 287(g) Agreement is alleged, but they assert that the Board had knowledge of Sheriff Jenkins' intention to enter into the 287(g) Agreement, and the Board "[did] not restrict[] Sheriff Jenkins' use of any previous, current, or future appropriations to prevent him from using local tax revenue to pay for salaries, costs, and expenses related to the unlawful 287(g) Agreement."

In their complaint, McClary and Stockton seek declaratory judgments against Sheriff Jenkins and the Board. Regarding Sheriff Jenkins, they request that the circuit court declare that the Sheriff's entry into the 287(g) Agreement and his use of local funds from Culpeper County in relation to the 287(g) Agreement are unconstitutional, unlawful, ultra vires, and void ab initio. Regarding the Board, McClary and Stockton ask the circuit court to declare the Board's "appropriation of funds, including local tax revenue," to Sheriff Jenkins, without any condition prohibiting those funds being used for enforcement of federal immigration law, to likewise be unconstitutional, unlawful, ultra vires, and void ab initio. Further, they request that the circuit

court enter preliminary and permanent injunctions preventing Sheriff Jenkins from acting pursuant to the 287(g) Agreement and enjoining the Board from appropriating funds to his office without attaching conditions prohibiting the use of such funds for expenses related to the 287(g) Agreement.

Sheriff Jenkins and the Board both filed demurrers. In his demurrer, Sheriff Jenkins argues three reasons as to why McClary and Stockton's complaint should be dismissed: (1) federal law preempts state law regarding immigration, (2) McClary and Stockton lack standing to bring the suit, and (3) McClary and Stockton cannot show that Sheriff Jenkins acted outside the scope of his duty and authority. The Board argues in its demurrer that McClary and Stockton lack standing because they failed to identify any specific expenditures or costs, relating to the 287(g) Agreement, allegedly paid by the Board. The Board also asserts that Sheriff Jenkins had authority, under federal and state law, to enter into the 287(g) Agreement.

McClary and Stockton filed pleadings in response to the demurrers. In the conclusions of both pleadings in response, McClary and Stockton request that the circuit court deny the demurrers, but ask that if the circuit court grants the demurrers, they be given leave to "file an amended complaint . . . to address any infirmities the [c]ourt identifies."

On July 8, 2019, the circuit court entered a final order sustaining Sheriff Jenkins' and the Board's demurrers, without granting McClary and Stockton leave to amend. In a letter opinion, the circuit court explained that it was sustaining Sheriff Jenkins' demurrer because McClary and Stockton could not demonstrate that the Sheriff acted outside the scope of his duty and authority in entering into the 287(g) Agreement and taking action under the same. The circuit court relied on Code §§ 15.2-1609, 15.2-1730.1, and 19.2-81.6, stating that Virginia law authorized Sheriff Jenkins to enter into the 287(g) Agreement. The circuit court also mentioned that federal law

3

expressly authorizes such agreements and cited recent Virginia Attorney General opinions as further support for its ruling. The circuit court stated that because it had found Sheriff Jenkins acted lawfully, any appropriation by the Board to Sheriff Jenkins was likewise lawful.

McClary and Stockton appeal.

ANALYSIS

As a threshold issue, we will address McClary and Stockton's standing to maintain the action they filed. "[A]n action filed by a party who lacks standing is a legal nullity." *Kocher v. Campbell*, 282 Va. 113, 119 (2011). As such, "[s]tanding to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action." *Andrews v. American Health & Life Ins. Co.*, 236 Va. 221, 226 (1988). Thus, we must analyze whether McClary and Stockton have standing before considering the merits of their appeal.

McClary and Stockton argue that they have standing to maintain their suit against Sheriff Jenkins and the Board because their complaint alleged facts sufficient to establish local taxpayer standing. They assert that there are no special pleading requirements for local taxpayer suits and that, like any plaintiff's complaint, their complaint only has to be made with "sufficient definiteness."

McClary and Stockton recognize that local taxpayer suits must make "allegations of [local] government costs or expenditures connected to" the challenged government action. *Lafferty v. School Bd.*, 293 Va. 354, 363 (2017). They contend that their complaint satisfies this "minimal requirement." McClary and Stockton assert that their complaint sufficiently "explains how the Board collects their taxes and voluntarily appropriates that local tax money to Sheriff Jenkins with knowledge that he will use it to enforce federal civil immigration law." They argue

4

that they do not need to allege specific local costs or expenditures to establish standing and contend that such a requirement would be too "hyper-specific" of a standard. We disagree.

Jurisdictional issues are questions of law, which we review de novo. *Westlake Legal Grp. v. Flynn*, 293 Va. 344, 349 (2017).

Standing requires that a party must show "a personal stake in the outcome of the controversy." *Goldman v. Landsidle*, 262 Va. 364, 371 (2001); *Cupp v. Board of Supervisors*, 227 Va. 580, 589 (1984) (citation omitted) ("The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy . . . .'"). Typically, to establish standing a plaintiff must allege a particularized injury that is separate from the public at large. *See e.g., Friends of the Rappahannock v. Caroline Cty. Bd. of Supervisors*, 286 Va. 38, 48 (2013). However, we have recognized the existence of local taxpayer standing to challenge expenditures by local governments, even when no such injury is alleged. *See Lafferty*, 293 Va. at 363; *Burk v. Porter*, 222 Va. 795, 797 (1981); *Gordon v. Board of Supervisors*, 207 Va. 827, 831 (1967).

We have previously explained that local taxpayer standing in actions against the local government is permissible because it is "'premised on the peculiar relationship of the taxpayer to the local government that makes the taxpayer's interest in the application of municipal revenues direct and immediate,' giving local taxpayers a personal stake in the outcome of the controversy." *Lafferty*, 293 Va. at 363 (quoting *Goldman*, 262 Va. at 372). Thus, local taxpayers have the common law right "to challenge the legality of expenditures by local governments." [2] *Id.*

_____

[2] For the purposes of our analysis, we assume without deciding that it is possible for a taxpayer to maintain an action against a sheriff based solely upon local taxpayer standing. However, sheriffs are constitutional officers and "[t]heir offices and powers exist independent

5

A local taxpayer's standing is directly tied to the expenditures of the local government. *Id.* at 363-64. Consequently, there must be a connection between a local taxpayer's complaint and government expenditures for the local taxpayer to have standing to sue. *Id.*

We have previously held that local taxpayers have standing to bring suit seeking an accounting and reimbursement where members of a county's board of supervisors allegedly financed an unauthorized cross-country trip from Virginia to California. *Burk*, 222 Va. at 796-97. There, the plaintiff-taxpayer identified the illegal expenditures as withdrawals of county funds to pay for expenses related to the trip. *Id.* at 797. We have also previously decided that local taxpayers have standing to bring suit to prevent their county's board of supervisors from lending money ($20,000) to the county's airport authority for preliminary costs related to the construction of an airport. *Gordon*, 207 Va. at 828, 831. In more than one instance, we have also ruled that local taxpayers have standing to challenge the legality regarding a locality's issuance of bonds. *See Armstrong v. Henrico Cty.*, 212 Va. 66, 76 (1971) (holding that taxpayers had standing to challenge an agreement regarding issuance of bonds to finance certain sanitary district expenditures); *Appalachian Elec. Power Co. v. Town of Galax*, 173 Va. 329, 333 (1939) (finding that local taxpayers had standing to prevent the issuance of bonds to finance the construction of an electric generating plant).

When a taxpayer challenges a policy, the complaint must do more than identify a policy that the plaintiff disagrees with. *Lafferty*, 293 Va. at 364-65. The complaint must contain "allegations of costs or expenditures connected to the policies implemented" for there to be local taxpayer standing. *Id.*

---

from the local government and they do not derive their existence or their power from it." *Roop v. Whitt*, 289 Va. 274, 280 (2015). Constitutional officers are not agents of nor are they subordinate to the local government.

6

Notably, in *Lafferty*, a case with striking similarities to the one at hand, we held that plaintiffs did not have local taxpayer standing to challenge a policy where they did not identify specific expenditures related to the policy. *Id.* at 363-65. In that case, a student and his parents sought a declaratory injunction against the school board for "unlawful expansion of its non-discrimination and student code of conduct policies." *Id.* at 358. However, the student and his parents failed to identify any costs or expenditures related to the policies complained of; the only financial costs mentioned by plaintiffs were the costs of defending the Board in court, which we ruled were insufficient. *Id.* at 363. There, we ruled that the plaintiffs lacked standing because they merely "[took] a position and then challeng[ed] the government to dispute it." *Id.* at 365.

Here, the question is whether McClary and Stockton's allegations that the Board appropriated funds to the Sheriff generally, and that some of those funds contributed in some nonspecific and undifferentiated amount in assisting the Sheriff in his execution of the 287(g) Agreement, are sufficient to establish local taxpayer standing. We find they are not.

The core of a local taxpayer suit is an expenditure appropriated by the local government connected to an objectionable act or policy. As discussed above, local taxpayers have an interest in the application of their *revenue* and have the common law right to challenge *expenditures*. McClary and Stockton have not identified, with sufficient specificity, any additional expenditures, costs, or appropriations by the local government that would give rise to local taxpayer standing in this instance. McClary and Stockton do not point to a discrete event, appropriation or withdrawal, or expenditure of funds, as the plaintiffs did in *Burk*. There are no allegations regarding a certain dollar amount or specifics concerning the appropriation of local tax revenues, which were present in *Gordon*. Also, there are no bonds at issue, resulting in ongoing financial obligations, like in *Armstrong* and *Appalachian Electric Power*.

7

Unlike the plaintiffs in *Lafferty*, McClary and Stockton do mention costs and expenditures related to the 287(g) Agreement, but only in broad strokes, without identifying any discrete appropriation or payment by the local government in support of the policy or actions they seek to prohibit. McClary and Stockton argue that they pointed to costs and expenditures with "sufficient definiteness" to survive demurrer, but we find that they did not.

While Virginia does have minimal requirements for pleading claims in a complaint, McClary and Stockton merely identified a policy they disagree with and stated that any expenditures related to that policy were unlawful. We conclude that such vague, speculative, and conclusory allegations of a connection between the expenditure of local funds and the policy or action the taxpayer seeks to prohibit do not meet the requirements to establish local taxpayer standing. Therefore, McClary and Stockton lack standing to initiate this proceeding and we affirm the circuit court's dismissal under the right-result-different-reason doctrine. [3] *See e.g., Haynes v. Haggerty*, 291 Va. 301, 305 (2016).

## CONCLUSION

For the reasons stated, McClary and Stockton lack standing to file this action. Accordingly, we will affirm the circuit court's dismissal of the action, without prejudice to any future action on such a claim if brought by a plaintiff with standing.

*Affirmed.*

---

[3] Given our ruling regarding standing, the action filed by McClary and Stockton is a legal nullity, and the appellants' assignment of error concerning the circuit court's failure to grant them leave to amend that action is moot.